# EXHIBIT A

**Index of Exhibits**

A. Complaint

B. Summons

C. Certificate Regarding Compulsory Arbitration

JAMES P. ARMSTRONG (#020761)
**THE ARMSTRONG FIRM**
A PROFESSIONAL CORPORATION
4638 EAST SHEA BOULEVARD
BUILDING B, SUITE 260
PHOENIX, ARIZONA 85028
TEL: 602.788.0095
FAX: 602.992.0493
EML: JAMES@THEARMSTRONGFIRM.NET

ATTORNEYS FOR MR. AND MRS. CUSTER

COPY

NOV 3 0 2010

MICHAEL K. JEANES, CLERK
K. DYER
DEPUTY CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| SEAN P. CUSTER and KATHRYN A. CUSTER, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>KNIGHT REFRIGERATED, LLC, an Arizona corporation; JAMES UPDIKE and SARAH UPDIKE, husband and wife; and DOES I – X, inclusive,<br><br>Defendants. | No. CV2010-054724<br><br>**COMPLAINT**<br><br>(Tort Assault; Tort Battery; Constructive Discharge; Wrongful Discharge; Intentional Infliction of Emotional Distress; Aggravated Negligence and Willful Misconduct; Negligent Infliction of Emotional Distress; Respondeat Superior; Wage and Hour Violation; Loss of Consortium; Punitive Damages)<br><br>**TRIAL BY JURY DEMANDED** |

Plaintiff Sean P. Custer and Kathryn A. Custer, by and through their attorney undersigned, for their Complaint against Defendants Knight Refrigerated, LLC and James Updike (collectively, "Employer"), alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiffs Sean P. Custer ("Mr. Custer") and Kathryn A. Custer ("Mrs. Custer") are a married couple residing in the County of Maricopa, State of Arizona.

2. Defendant Knight Refrigerated, LLC ("Knight Refrigerated") is an Arizona limited liability company doing business in the County of Maricopa, State of Arizona.

3. Upon information and belief, Defendant James Updike ("Mr. Updike") is a married individual residing in the County of Maricopa, State of Arizona.

-1-

4. Upon information and belief, Defendant Sarah Updike ("Ms. Updike") is married to Mr. Updike, and is an individual residing in the County of Maricopa, State of Arizona.

5. Ms. Updike is named herein to reach the assets of the Updike marital community, and Ms. Updike is not, as of the time of the filing this Complaint, alleged to have taken any action described herein.

6. The Doe Defendants named herein are persons, real or artificial, that engaged in or contributed to the actions of herein complained, and that share or are responsible for the harm caused herein, the true names of whom are not yet known, but when discovered will be added hereto by an amended pleading effective as of the date of the filing of this Complaint.

7. The Defendants hereto took actions within the County of Maricopa, State of Arizona, making jurisdiction proper over their person proper.

8. All actions complained of herein took place in the County of Maricopa, State of Arizona, making venue in this Division of this Court proper.

## GENERAL ALLEGATIONS

9. Mr. Custer is a 2000 graduate of Ironwood High School and a 2005 graduate of Arizona State University.

10. While attending Arizona State University, Mr. Custer entered the work force, accepting a position as a Irrigation Technician with Intrawest Golf at The Trilogy at Vistancia.

11. After graduation from Arizona State, Mr. Custer was employed by the City of Peoria's Parks and Recreation Department from May 2005 to September 2005 as a groundskeeper at Rio Vista Community Park.

12. Also in September 2005, Mr. Custer took on another occupation assembling generator casings for Southwest Products Corporation, which position Mr. Custer held until February 2006.

1   13. In February 2006, Mr. Custer became employed at Knight Transportation as a Credit Manager.

2   14. Between 2006 and 2007 Mr. Custer served capably in his position as Credit Manager, receiving positive informal and formal employment appraisals from Adam Miller, Knight Refrigerated's Vice President of Finance, Mr. Updike, Knight Refrigerated's Vice President of Sales and Acting General Manager, and Knight Refrigerated's President Erick Kutter.

15. In 2007, as a result of his capable and valuable contributions to Knight Refrigerated, Mr. Custer was promoted from Credit Manager to Implementation Manager at Knight Refrigerated.

16. At the same time as his promotion to Implementation Manager, Mr. Custer also received a raise in compensation from Knight Refrigerated.

17. While employed by Knight Refrigerated, Mr. Custer routinely worked long hours, arriving early, staying late, and accepting additional projects, all to the betterment of Knight Refrigerated.

18. In fact, Mr. Custer was given additional responsibilities typically assigned to the Assistant General Manager of Knight Refrigerated.

19. Knight Refrigerated, however, failed to change Mr. Custer's title to reflect these responsibilities or provide adequate compensation for the new responsibilities Mr. Custer assumed at Knight Refrigerated.

20. Mr. Custer brought the lack of adequate compensation and title to Mr. Updike, but Mr. Updike threatened Mr. Custer, and told him to simply accept the additional responsibilities or Mr. Custer would never be considered for another promotion at Knight Refrigerated.

21. Mr. Custer regularly worked more than 40 hours per week while employed at Knight Refrigerated.

22. Mr. Custer did not, however, while employed by Knight Refrigerated have managerial or supervisory responsibility in his positions, and did not make independent decisions with respect to work performed in his position at Knight Refrigerated.

23. Rather, Mr. Custer took direction from his superiors at Knight Refrigerated, including Mr. Updike, as to how to complete his assigned tasks.

24. Nonetheless, for his entire period of employment at Knight Refrigerated, Mr. Custer was compensated as a salaried employee, rather than an hourly employee.

25. As a result of being paid as a salaried employee, Mr. Custer has not been paid the overtime to which he is entitled.

26. For the first 30 months of Mr. Custer's employment at Knight Refrigerated, Mr. Custer was not verbally, physically or emotionally abused.

27. In June of 2008, however, after Mr. Custer was transferred under the direct supervision of Mr. Updike, a pattern of verbal, physical emotional abuse commenced.

28. Also during his employment with Knight Refrigerated, Mr. Custer learned from other employees of Knight Refrigerated that Mr. Updike had a pattern of displaying anger and outbursts toward Knight Refrigerated employees.

29. During the time that he worked at Knight Refrigerated, Mr. Updike was an employee of Knight Refrigerated.

30. Mr. Updike had actual or apparent authority of Knight Refrigerated in carrying out his conduct with respect to Mr. Custer while employed at Knight Refrigerated and as described herein.

31. Mr. Updike was a representative of Knight Refrigerated in carrying out his conduct with respect to Mr. Custer while employed at Knight Refrigerated and as described herein.

32. Mr. Updike was a managing agent of Knight Refrigerated in carrying out his conduct with respect to Mr. Custer while employed at Knight Refrigerated and as described

herein.

33. In carrying out his conduct with respect to Mr. Custer and as described herein, Mr. Updike was an employee of Knight Refrigerated with immediate or successively higher authority over Mr. Custer while employed at Knight Refrigerated.

34. During Mr. Custer's employment at Knight Refrigerated, numerous employees at Knight Refrigerated were aware of Mr. Updike's reputation for a bad temper and outbursts at employees.

35. During Mr. Custer's employment at Knight Refrigerated, not only Knight Refrigerated, but also its top management, were aware of Mr. Updike's conduct in engaging outbursts at employees.

36. Mr. Updike's history of improper conduct toward Knight Refrigerated employees covered at least three years between 2007 and 2010.

37. Between 2007 and 2010, Knight Refrigerated took no action to protect its employees from Mr. Updike's conduct.

38. As a result of Knight Refrigerated's failure to control Mr. Updike's interaction with Knight Refrigerated employees, Mr. Updike verbally and emotionally abused Mr. Custer during Mr. Custer's employment with Knight Refrigerated.

39. Mr. Updike's verbal and emotional abuse of Mr. Custer often occurred in front of other persons, including employees of Knight Refrigerated.

40. That Mr. Updike's abuse occurred in front of third parties caused additional harm and embarrassment to Mr. Custer.

41. Mr. Custer, at no time during his employment with Knight Refrigerated, did anything to provoke Mr. Updike warranting Mr. Updike's abuse of Mr. Custer.

42. Mr. Custer, at no time during his employment with Knight Refrigerated, ever abused, intimidated or otherwise harmed Mr. Updike.

43. Mr. Custer, at no time during his employment with Knight Refrigerated, ever

consented to being abused by Mr. Updike.

44. Mr. Updike is a large and physically imposing man, standing six feet and one inch tall and weighing some 215 pounds.

45. Further, Mr. Updike has been professionally trained in mixed martial arts

46. On February 10, 2010, Mr. Updike physically struck Mr. Custer, causing a hematoma.

47. On February 10, 2010, Mr. Updike also verbally abused Mr. Custer.

48. On or before February 10, 2010, Mr. Custer did nothing to provoke, injure or assault Mr. Updike.

49. Mr. Updike's February 10, 2010 assault was the culmination of 18 months of abuse of Mr. Custer by Mr. Updike.

50. For example, in 2010 Mr. Updike threatened Mr. Custer with the words "I'll kill you."

51. On another occasion in 2010, Mr. Updike struck Mr. Custer's chair, which Mr. Custer was seated in, and stood over Mr. Custer threatening to strike Mr. Custer.

52. For Mr. Custer, Mr. Updike's February 10, 2010 assault was the last Mr. Custer could take of Mr. Updike's abuse.

53. On February 10, 2010, immediately after Mr. Updike assaulted Mr. Custer, Mr. Custer left the premises of Knight Refrigerated.

54. As a direct result of Mr. Updike's February 10, 2010 assault of Mr. Custer, Mr. Custer was constructively discharged from Knight Refrigerated.

55. Despite opportunity, neither Mr. Updike nor Knight Refrigerated has denied that Mr. Updike for 18 months verbally and emotionally abused Mr. Custer.

56. Despite opportunity, neither Mr. Updike nor Knight Refrigerated has denied that Mr. Updike physically assaulted Mr. Custer on February 10, 2010.

///

## FIRST CLAIM FOR RELIEF

### (Assault)

57. Mr. Custer incorporates by reference herein Paragraphs 1 through 56 of the Complaint as though set fully forth herein.

58. Defendants' actions as described above intended to cause harm or offensive contact with Mr. Custer or intended to cause Mr. Custer apprehension of an immediate harmful or offensive contact.

59. Mr. Custer in fact suffered an apprehension of immediate harmful or offensive contact as a direct result of Defendants' actions as described above.

60. Defendants' actions as described above have directly and proximately caused Mr. Custer to suffer damages in an amount to be proven at trial, including attorney's fees, costs and expenses.

## SECOND CLAIM FOR RELIEF

### (Battery)

61. Mr. Custer incorporates by reference herein Paragraphs 1 through 60 of the Complaint as though set fully forth herein.

62. Defendants' actions as described above intended to cause harm or offensive contact with Mr. Custer.

63. Mr. Custer in fact suffered harm and offensive contact as a direct result of Defendants' actions as described above.

64. Defendants' actions as described above have directly and proximately caused Mr. Custer to suffer damages in an amount to be proven at trial, including attorney's fees, costs and expenses.

## THIRD CLAIM FOR RELIEF

### (Constructive Discharge)

65. Mr. Custer incorporates by reference herein Paragraphs 1 through 64 of this

Complaint as though set fully forth herein.

66. Mr. Custer's working conditions as described above were objectively difficult or unpleasant to the extent that a reasonable employee would feel compelled to resign.

67. Defendants engaged in outrageous conduct as described above.

68. As a direct and proximate result of Defendants' conduct as described above, Mr. Custer felt compelled to resign his position with Knight Refrigerated.

69. Defendants' actions as described above have directly and proximately caused Mr. Custer to suffer damages in an amount to be proven at trial, including attorney's fees, costs and expenses.

## FOURTH CLAIM FOR RELIEF

### (Wrongful Discharge in Violation of Public Policy)

70. Mr. Custer incorporates by reference herein Paragraphs 1 through 69 of this Complaint as though set fully forth herein.

71. It is the public policy of the State of Arizona to prevent the bodily harm of its citizens and residents.

72. Arizona's public policy protecting its citizens from bodily harm is set forth in certain constitutional provisions and statutes, including without limitation, the Arizona Constitution, Article 18, Section 6, and the Arizona Revised Statutes Section 13-1203.

73. The Arizona Revised Statutes, Section 13-1203, defines assault as: "1. Intentionally, knowingly or recklessly causing any physical injury to another person; or 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or 3. Knowingly touching another person with the intent to injure, insult or provoke such person."

74. As described above, Defendants assaulted Mr. Custer, without provocation, right, privilege or justification.

75. As the result of Defendants' conduct as described above, Defendants' assault

of Mr. Custer resulted in the discharge of Mr. Custer.

76. The discharge of Mr. Custer by Knight Refrigerated was wrongful and in violation of public policy.

77. Defendants' actions as described above have directly and proximately caused Mr. Custer to suffer damages in an amount to be proven at trial, including attorney's fees, costs and expenses.

### FIFTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

78. Mr. Custer incorporates by reference herein Paragraphs 1 through 77 of this Complaint as though set fully forth herein.

79. Defendants' conduct as described above was extreme and outrageous.

80. Defendants' extreme and outrageous conduct as described above is conduct that an average member of the community would regard as atrocious and beyond all bounds of decency.

81. Defendants knew Mr. Custer was particularly susceptible to emotional distress.

82. Defendants' conduct as described above was not privileged.

83. Defendants' conduct as described above served no legitimate business purpose.

84. In engaging in the conduct as described above, Defendant abused a position or relationship of authority over Mr. Custer.

85. Defendants' conduct as described above was either intentional or reckless.

86. As the direct result of Defendants' conduct above, Mr. Custer suffered severe emotional distress.

87. Defendants' actions as described above have directly and proximately caused Mr. Custer to suffer damages in an amount to be proven at trial, including attorney's fees,

1 | costs and expenses.

## SIXTH CLAIM FOR RELIEF

### (Aggravated Negligence (as to Mr. Updike Only) and Willful Misconduct)

88. Mr. Custer incorporates by reference herein Paragraphs 1 through 87 of this Complaint as though set fully forth herein.

89. Mr. Updike's willful and wanton conduct as described above was undertaken with reckless indifference to the results of such conduct or to the rights or safety of others.

90. Mr. Updike's conduct as described above created an unreasonable risk of harm to Mr. Custer.

91. The risk created by Mr. Updike's conduct as described above was so great that it was highly probable that harm would result.

92. The injuries suffered by Mr. Custer were caused by Defendants' willful misconduct.

93. Defendants' actions as described above have directly and proximately caused Mr. Custer to suffer damages in an amount to be proven at trial, including attorney's fees, costs and expenses.

## SEVENTH CLAIM FOR RELIEF

### (Negligent Infliction of Emotional Distress – as to Mr. Updike Only)

94. Mr. Custer incorporates by reference herein Paragraphs 1 through 93 of this Complaint as though set fully forth herein.

95. In the alternative to the intentional torts alleged above, Mr. Custer alleges Mr. Updike's conduct as described above was negligent.

96. Mr. Updike's negligence created an unreasonable risk of bodily harm to Mr. Custer.

97. Mr. Updike's negligence was a cause of emotional distress to Mr. Custer.

98. Mr. Custer's emotional distress resulted in physical injury or illness to Mr.

1 | Custer.

2 | 99. Mr. Updike's actions as described above have directly and proximately caused
3 | Mr. Custer to suffer damages in an amount to be proven at trial, including attorney's fees,
4 | costs and expenses.

## EIGHTH CLAIM FOR RELIEF

### (Respondeat Superior—as to Knight Refrigerated Only)

100. Mr. Custer incorporates by reference herein Paragraphs 1 through 99 of this Complaint as though set fully forth herein.

101. In engaging in the abuse and assault set forth above, Mr. Updike was acting within the scope of his employment for Knight Refrigerated.

102. In abusing and assaulting Mr. Custer, Mr. Updike was acting with the full knowledge and consent of Knight Refrigerated, who was aware of Mr. Updike's aggressive conduct toward employees, and consented to same, expressly or implicitly, in Mr. Updike carrying out his managerial responsibilities assigned by Knight Refrigerated.

103. Mr. Updike engaged in the conduct as described above out of motivation to serve his employer, Knight Refrigerated.

104. Knight Refrigerated is responsible for the actions described above of its employee Mr. Updike.

105. Defendants' actions as described above have directly and proximately caused Mr. Custer to suffer damages in an amount to be proven at trial, including attorney's fees, costs and expenses.

## NINTH CLAIM FOR RELIEF

### (Wage and Hour Violation)

106. Mr. Custer incorporates by reference herein Paragraphs 1 through 105 of this Complaint as though set fully forth herein.

107. Mr. Custer did not supervise other employees while employed at Knight

Refrigerated.

108. Mr. Custer was instructed how to perform his duties while employed at Knight Refrigerated, and did not exercise independent judgment while carrying out those duties.

109. Mr. Custer routinely worked in excess of 40 hours per week while employed at Knight Refrigerated.

110. Mr. Custer was not paid overtime for hours worked in excess of 40 hours per week.

111. Defendants' actions as described above have directly and proximately caused Mr. Custer to suffer damages in an amount to be proven at trial, including unpaid wages, interest on same, treble damages for same, and attorney's fees, costs and expenses.

## TENTH CLAIM FOR RELIEF

### (Loss of Consortium)

112. Mr. Custer incorporates by reference herein Paragraphs 1 through 111 of this Complaint as though set fully forth herein.

113. Plaintiff Kathryn A. Custer, as a result of Defendants' actions as described above, has suffered a loss of consortium as to Mr. Custer in an amount to be proven at trial.

114. Defendants' actions as described above have directly and proximately caused Ms. Custer to suffer damages in an amount to be proven at trial, including attorney's fees, costs and expenses.

## ELEVENTH CLAIM FOR RELIEF

### (Punitive Damages)

115. Mr. Custer incorporates by reference herein Paragraphs 1 through 114 of this Complaint as though set fully forth herein.

116. Defendants' conduct as described above was taken intentionally, knowing its conduct was likely to cause unjustified, significant damage to Mr. Custer.

117. Defendants' conduct as described above was patently improper, and its conduct oppressive, outrageous and intolerable.

118. Defendants' conduct should be discouraged by awarding an amount sufficient to deter future conduct, upon proof of Defendants' net worth.

WHEREFORE, Mr. Custer respectfully requests that this Court enter its Order:

A. Awarding Mr. Custer all earnings and benefits (including without limitation, medical benefits) lost to date, all earnings lost in the future as the result of Defendants' conduct, and any decrease in earning power or capacity in the future;

B. Awarding Mr. Custer compensatory damages for the pain, discomfort, suffering, anxiety, embarrassment, humiliation, and emotional distress already experienced, and reasonably probable to be experienced in the future as a result of the Defendants' conduct;

C. Awarding Mr. Custer reasonable expenses of necessary medical care, treatment, and services rendered and reasonably probable to be incurred in the future;

D. Awarding Mr. Custer compensatory damages for the physical injury to Mr. Custer;

E. Awarding Mr. Custer compensatory damages for harm to Mr. Custer's reputation;

F. Awarding Ms. Custer compensatory damages for loss of consortium as to Mr. Custer;

G. Awarding Mr. Custer punitive damages against Defendants in an amount sufficient to punish them for their misconduct and to deter them from further misconduct;

H. Awarding Mr. Custer damages of every nature against all Defendants jointly and severally;

I. Awarding Mr. Custer his costs and reasonable attorneys' fees incurred herein;

1  J. Awarding Plaintiff prejudgment and post-judgment interest on all amounts awarded; and

2  K. Awarding Plaintiffs such other and further relief as the Court deems just.

RESPECTFULLY SUBMITTED this 30th day of November 2010.

THE ARMSTRONG FIRM
A PROFESSIONAL CORPORATION

BY: _____
JAMES P. ARMSTRONG
4638 EAST SHEA BOULEVARD
BUILDING B, SUITE 260
PHOENIX, ARIZONA 85028
ATTORNEYS FOR MR. AND MRS. CUSTER

```
 1 │ ORIGINAL of the foregoing filed
   │ this 30th day of November 2010 with:
 2 │
   │ Clerk of the Court
 3 │ Maricopa County Superior Court
   │ Northeast Regional Court Center
 4 │ 18380 N. 40th Street
   │ Phoenix, Arizona 85032
 5 │
   │ COPY of the foregoing hand-delivered
 6 │ this 30th day of November 2010 to:
 7 │ Assigned Judge
   │ Maricopa County Superior Court
 8 │ Northeast Regional Court Center
   │ 18380 N. 40th Street
 9 │ Phoenix, Arizona 85032
10 │ By: /s/ Jessica Leigh Waldman
```